Merrimack,
June 29, 1933.

CARL Y. HOLMES, *Adm'r v.* EDITH M. MACKIE, *& a.*

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for the widow's heirs.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the testator's heirs.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the Mission Society.

ALLEN, J.   The evidence that the mission society is usually called the Missionary Society by members of the Advent faith was competent.   Whom the will referred to, was the ultimate inquiry.   The society went by a certain name.   It was not its name in law, but it was its name in fact, in the sense that it was called by that name.   It is not essential that it itself used the name.   It was an *alias*, as a name it was known by.   The name was a description that fitted. No other institution answered to it.   If the testator thus used the name in the will, it was the same as though he used its legal name. It would be no different than the case of one calling his son Henry by the name of Harry.

Whether the name was thus used might be shown by the testator's habit or way of using it.   *Jones* v. *Bennett*, 78 N. H. 224, 226.   Its general use by Adventists tended to show its use by him if he was an Adventist.   On this point the preamble of the will showed that he had a deep and strong religious nature.   His direction that the minister at his funeral should be of the Advent denomination and the provisions of the will designed to spread the Advent faith indicate his belief in Advent doctrines as well as some knowledge of the institutional organization of the denomination.   If they do not signify membership, they tend to show that he knew what an ordinary member knew.   From this it is reasonable to infer that he used a member's language in referring to the society.

Neither the hearsay nor the parol evidence rule is disregarded. How the society was called, was a fact to be shown by evidence how its members called it, whether or not they called it by its right name. No assertions or statements of the testator outside the will are received for the purpose of proving their truth. Habit or method of speech is properly shown by what is said. There is thus simply a showing that the testator gave to the society a name generally used, known to him, and naturally used by him. Whether the description is correct or incorrect is immaterial if it fits. Mistakes of erroneous substitution, unintended omissions, and possibly unintended inclusions are different matters. The court may not alter or amend a will but it may read it from the testator's standpoint, receiving the will and other competent evidence to show what the standpoint is.

The society has the standing it would have if the will had named it correctly.

The language of the will in its disposal of the testator's residuary estate is not readily construed. There is force and reason in the claim of each of the three interests. For the widow's estate the full title to the residue in her is claimed, the expression of wish for the unexpended part of it to be left to the society being no more than a statement of what he would like to have her do without making it an enforceable limitation. For the testator's heirs it is argued that the will as a whole shows that the widow was given only such part of the residue as she might use in her lifetime, that the society could receive the unexpended part only as she might thus leave it by her will, and that her failure therein created an intestacy of the part. The society contends that there was a disposal by the will of the testator giving the unexpended part to it.

The testator planned how his estate was to go and wrote out the plan. It was not a complicated one. He virtually disinherited two of his children although he seems to have held them in favor. He gave them his love and goodwill. The other child was a minor and was given a substantial legacy but only if he became of age. If he sooner died, the legacy went to the society. Following a legacy of a machine and tools, the residue was given outright to the testator's wife in expression comprehensive in the extent both of the property and of her title thereto. In conclusion of the plan he named her the executrix. It apparently then occurred to him as an afterthought that she might not use all of the residue. What might be left at her decease became a matter of consideration.

Being one of men in general, he probably understood that his chil-

dren would not inherit from her. The will shows no purpose to meet the event by any provision giving them what might remain. He had done for them all that he saw fit. Instead of rewriting the residuary clause he added a paragraph with reference to the event. It indicates that the society, in which he was interested, and not his children, for whom he cared to do no more, nor his wife's heirs, in whom so far as appears he had no interest, was meant to have the fund. Having the society in mind as the recipient of the fund, he stated his thought in words considered to denote a direction intended to secure his benevolent purpose. In the light of the natural influence of his religious vigor and of his apathy of inclination to bestow material aid upon any persons except his wife and minor child the words amount to more than a suggestion of what he would like done but leaving it to his wife's pleasure to do it.

What estate he had or what he expected might be left at his wife's decease, does not appear, but it was enough to concern him. That he parenthetically addressed the clause of limitation to his wife, is without stressful bearing. Although she would have nothing to do with the payment of the fund to the society, she would be required to keep the residue separate from her own property, whatever she had or might acquire, to enable the fund to be ascertained at her decease. There was thus some direction naturally made to her personally. The words of address do not serve to show that she was given optional discretion to make a will without which the society might not take.

Nor is the difference between the definite phrasing of testamentary disposal in other clauses of the will and the wording of the clause in question of much significance. The main part of the will was in pursuance of a plan carefully thought out and expressed. The clause in question met a situation apparently of new impression and was less carefully worded and more naturally in a layman's ordinary manner of talk. Without resort to the constructional rule that words of civility may be regarded as mandatory (*Erickson* v. *Willard*, 1 N. H. 217, 219), the words "it is my wish that it be left" are equivalent in effect to the words "I leave it" or "it is to go." They dealt with a part of the testator's own property and no reason is advanced why he should not make the final decision about it. No occasion for delegating it to his wife is suggested.

If his wife had predeceased him, an intestacy of the residue would be an outcome defeating his purpose. He intended that the society should have the unexpended part of it as much as he intended that it should have the legacy to his minor son in the event of the son's

death before majority. Clearly the society was the one object of his bounty aside from his provisions for his family, and whether or not his wife survived him, the residue so far as she did not use it was within the bounty.

Conceding that there is some policy for invoking authority in cases of the construction of wills when there is substantial identity of language and the surrounding circumstances effect no difference of meaning, the case is readily distinguishable from that of *Brown* v. *Eastman*, 72 N. H. 356. In that case, after an outright gift of the residue to the testator's wife he requested that "she give" part of what might be left at her decease to his heirs. This contemplated a will of the wife to effectuate a gift to the heirs. As a will was a matter of option with her, the request was only a recommended suggestion. Here, the testator in saying that he wished the unexpended residue to be left to the society did not mean that his wife was thus to leave it by her will. It was to go by the operation of his own will.

Authority is found for a rule that when a legatee is given a bequest of property with full title thereto, a subsequent limitation of what may remain at the legatee's death is valid only as a substitution for the legacy in the event of its lapse. The argument is that since the property is fully disposed of, the legatee's unlimited ownership leaves no control over it by the testator. Having given unrestrictedly, he may not say what the donee shall do. An annotation in 75 A. L. R. 71 discusses the rule and cites cases.

As a rule helping to show actual intention it may be of value. As a rule disregarding actual intention it is not here in force. It more or less ignores the principle that a will is to be read in its entirety and that the context may affect particular clauses. Whether the limiting context precedes or follows is unimportant. A will is incomplete until it is completed. An outright legacy of property may be modified, limited and even revoked by subsequent provisions. The will as well as a codicil or a new will may thus be effective. If before execution the will shows that the testator had a change of purpose respecting particular bequests and sets forth the change, a rule that it is too late or that what has been done cannot be undone is indefensible. The cases holding a limitation made after an unqualified legacy to be invalid carry some idea that a legacy giving full title to property shuts the door to limitations as though the legacy were a delivered gift. So far as the rule of these cases interferes with the rule of construing wills by a rational ascertainment of actual intention, it has never been adopted here. An outright bequest of property

may tend to show that subsequent reference in the will to the property falls short of modifying the bequest. It is a point of consideration but not a controlling test. The issue of the testamentary character of the reference is to be determined upon all of the competent evidence and not by giving decisive weight to one item of evidence when other evidence has reasonable relevancy. The last word may be more important than the first.

The chief justice concurs in the foregoing views. A majority of the court however, construe the will to accord with the following statement of their opinion.

The will shows no purpose that the testator's children should take the part of the residue which his wife might not use. He had done all for them that he saw fit. When it occurred to him before the final completion of the will that there might remain some part of the residue at his wife's death, instead of rewriting the residuary clause he inserted a paragraph more in the form of a note addressed to his wife than in the terms of testamentary disposal which he had theretofore used. In the light of his plan and the manner of language elsewhere in the will, the words of the paragraph "my wish that it be left" indicate a request that his wife leave the unused part of the residue to the society by her will more than a disposal of it by him. His purpose to impose more than a moral obligation is not disclosed. It was uncertain how much if any of the residue would be left and there is no probability that a substantial amount was in his mind. How much estate he had and other facts bearing on the probability do not appear.

Without exercising control he said what he would like to have his wife do. He preferred that the society, in which he was interested, instead of her heirs, in whom so far as appears he had no interest, should take, but his preference was not made a requirement. The clause that all of the residue was to be his wife's estate remained unimpaired.

In employment of the customary reasoning of helpful if indecisive contrast, other language would have been more naturally used if a limitation of his wife's title had been intended. He would hardly have made it by way of a statement to her. She would be dead when the time came for it to be operative and would have nothing to do with its administration. The occasion for the use of words of civility is extremely slight. Taking into account the testator's general manner of language definitely expressive of testamentary purpose, words of direct bequest such as "I leave it to" would be expected instead of the less insistent phraseology adopted.

The foregoing considerations are equally applicable to the claims of a direct limitation of the residue and its full title in the widow subject to the imposition of a precatory trust. The idea that she held the residue in an unrestricted manner for which she could not be called to account but that at the same time she was under a trustee's duty to keep account so that at her decease it might appear how much if any of it remained, leads to inconsistency. Having the general right to use the residue as her own, she could add it to and mingle it with her other property if she had or might have any. It is unlikely that the testator entertained the thought that on her decease her representative was to be chargeable as a trustee of the unexpended balance when he had shown no purpose to charge his wife as a trustee of the entire residue. The personal address to her is not enough to transform her legal title to one of trusteeship.

The case has slight likeness to that of *Foster* v. *Willson*, 68 N. H. 241, in which the limiting clause, held to constitute a precatory trust and thus to give an equitable interest in the property affected, immediately followed the disposal of the legal title with the introductory words "but it is my wish and desire" and also gave to the beneficiary of the interest its enjoyment concurrently with the use and enjoyment of the property by the devisee of the legal title.

The case is more parallel with that of *Brown* v. *Eastman*, in which a will left the residue to the testator's wife to use "as she may please for her comfort, happiness, or pleasure, either at home or abroad," with the immediately following words "and if there is anything left at her decease, it is my request that she give . . . one-half . . . to my heirs." The residue was held to be given outright to the wife, leaving it optional with her to comply with the request. Both in that case and in this the full disposal of the residue to the wife is accomplished by the language employed. And the difference between the words claimed to constitute a limitation in the cases seems only verbal. The wordings "it is my request that she give" and "(to Sarah) . . . it is my wish that it be left" show sameness of thought in avoidance of imposing legal obligation on the wife or of impairing her title. While cases of construction stand mostly upon their individual merits, there is some policy for invoking authority when there is substantial identity of language and the surrounding circumstances effect no difference of meaning.

The plaintiff is advised that the widow's estate is entitled to the fund.

*Case discharged.*